UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| STANLEY J. MUTE, | 4:08-cv-00010-RRB-SAO |
| Petitioner, | |
| vs. | **FINAL REPORT AND RECOMMENDATION REGARDING PETITIONER'S SECOND AMENDED PETITION FOR WRIT OF HABEAS CORPUS (Dkt. 45), MERIT BRIEF (Dkt. 122) AND MOTION FOR EVIDENTIARY HEARING (Dkt. 133)** |
| BRUNO STOLC, | |
| Respondent. | |

## INTRODUCTION

Stanley Mute was convicted of two counts of sexually assaulting his girlfriend, M.E., as well as one count of assaulting M.E.'s brother, Herman. After litigating a number of claims in state court, Mute filed a petition for a writ of habeas corpus in federal court. Two of Mute's three claims were dismissed because Mute failed to raise them in any state court proceeding. The remaining claim is that the relationship between Mute and his attorney had broken down to the point where Mute was effectively denied his right to counsel, Docket 122. Mute has also requested an evidentiary hearing, at Docket 133, claiming that he should be able to develop additional facts supporting this claim.

## ISSUES PRESENTED

1. Did the Alaska Court of Appeal's opinion in "Mute I"[1] result in a decision that was contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States?

---

[1] "Mute I" refers to Mute's trial and direct appeal in the Alaska state court system.

2. Did the Alaska Court of Appeal's opinion in "Mute I" result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding?

3. Is Mute entitled to an evidentiary hearing to develop the factual issues underlying his claims?

## FINDINGS OF FACT[2]

### 1. Underlying Criminal Offense and Charges

Stanley Mute lived in Napaskiak, a Yupik village a few miles away from Bethel, Alaska, with his girlfriend, M.E.[3] On November 17, 1995, Mute, M.E., and M.E.'s brother, Herman, were drinking alcohol.[4] Mute and M.E. began to argue, and when Herman tried to intervene, Mute and Herman fought.[5] Herman's arm was broken as a result of the altercation.[6] Herman left the residence to get help removing the children from the household.[7] Sometime after Herman left, M.E. was severely injured.[8] Mute was arrested, and charged with several offenses, including two counts of sexual assault against M.E., one count of simple assault against Herman, and one count of kidnapping.[9]

### 2. Criminal Trial

---

[2] All citations in this subsection and the next subsection will be to the trial transcript, lodged into the habeas corpus record at Docket 64, Response in Opposition to Respondent's Motion to Dismiss, Ex. A.
[3] Tr. 20-22, 35, 39, 99-101.
[4] Tr. 103, 114.
[5] Tr. 104-05, 132.
[6] Tr. 21-22.
[7] Tr. 106-07, 133, 138-39.
[8] Tr. 23-24, 26, 28. The injuries suffered by M.E. were both graphic and severe. I have chosen not to recount the details here, because the nature of M.E.'s injuries is not relevant to the relationship between Mute and his attorney. However, I do not mean to minimize or ignore the extent of the trauma suffered by M.E.
[9] The kidnapping charge was dismissed prior to trial. Tr. 4-5.

At the beginning of his trial, Mute objected to being represented by his court-appointed attorney, Victor Carlson.[10] Mute claimed, among other things, that Carlson did not file certain motions that Mute wanted to file. But when asked what those motions were, Mute could not identify them, or even explain his specific concern with Carlson's pre-trial planning and strategy.[11] Mute did claim that he felt Mr. Carlson was not providing him a zealous defense.[12] Mute stated that he and his attorney had not discussed any defense strategy, and disagreed about calling Paul Mute (Stanley's brother) as a witness.[13] The trial court judge denied Mute's motion for a new attorney, and indicated that she would appoint counsel to investigate Mute's claims at the conclusions of the trial if he was still unhappy with Carlson's performance.[14] Towards the conclusion of the trial, Mute objected to Carlson's efforts to subpoena M.E. to testify, because their child was sick and M.E. did not want to fly to Bethel to testify.[15] After M.E. was eventually brought to Bethel, she refused to testify, and Mute informed both Carlson and the court that he would refuse to testify. Mute also said that he did not want Carlson to call his brother, Paul Mute, as a witness.[16]

At this point, both sides presented their closing arguments; after closing arguments were complete, Mute changed his mind and decided that he wanted himself and Paul to testify. This request was denied by the judge, who noted that the time for Mute to present evidence had passed.[17] Mute was convicted by the jury of one count of first-degree sexual assault and one count of second-degree sexual assault.[18] He was also convicted of one count of assault for the

---

[10] Tr. 3-5.
[11] Tr. 7.
[12] Tr. 3.
[13] Tr. 3.
[14] Tr. 9-10.
[15] Tr. 198.
[16] Tr. 225.
[17] Tr. 243.
[18] State v. Mute, 4BE-S95-1287 (1996); Mute v. State, 954 P.2d 1384, 1385-86 (Alaska App. 1998).

altercation with Herman.[19] After the jury had returned its verdict, Mute told the judge that he wanted to file a motion for post-conviction relief.[20] The trial court judge appointed counsel to investigate Mute's claim, and that counsel represented Mute in his direct appeal.[21]

### 3. Direct Appeal ("Mute I")

Mute's convictions were affirmed on direct appeal.[22] Mute's counsel did not file a Petition for Hearing with the Alaska Supreme Court.[23] Mute filed a *pro se* Petition for Hearing in the Alaska Supreme Court on September 29, 1998.[24] The Petition was denied on December 28, 1998.[25]

### 4. State Post-Conviction Proceedings

Mute, again represented by appointed counsel[26], filed an application for post-conviction relief in state court on December 27, 1996.[27] The application was dismissed on October 27, 1997.[28] The dismissal was appealed to the Alaska Court of Appeals.[29] The Court of Appeals denied the appeal on January 10, 2001.[30] No Petition for Hearing was filed in the Alaska Supreme Court.[31]

---

[19] Id.
[20] Tr. 253-256.
[21] Tr. 257.
[22] Id.
[23] Docket 45, Second Amended Petition, at 3. In his Second Amended Petition, Mute argued that the attorney who filed his merit appeal, Scott Sidell, was suffering from a "serious mental disease or disorder" and did not file a Petition for Hearing with the Alaska Supreme Court, despite Mute's insistence that he do so. However, Mute has not alleged that Sidell's actions violated his Sixth Amendment rights, and thus Sidell's actions will not be reviewed here.
[24] Mute v. State, S-8852 (1998).
[25] Docket 45, Second Amended Petition, at 4.
[26] Mute was again represented by Mr. Sidell, the attorney who represented him during "Mute I". As noted earlier, although Mute referred to Sidell's failure to file a Petition for Hearing with the Alaska Supreme Court, that claim does not form the basis for any federal habeas relief in Mute's current petition.
[27] Mute v. State, 4BE-97-12 CI
[28] Docket 45, Second Amended Petition, at 4.
[29] Mute v. State, A-7397.
[30] Mute v. State, 2001 WL 21218 (Alaska App. 2001).
[31] Docket 45, Second Amended Petition, at 4.

Mute filed a second application for post-conviction relief.[32] This second application was denied.[33] An appeal was filed with the Alaska Court of Appeals.[34] The Court of Appeals again affirmed the lower court.[35] Mute filed a Petition for Hearing in the Alaska Supreme Court on December 28, 2007, which was later denied.[36]

**5. Federal Habeas Corpus Proceedings**

*a. Petition and First Amended Petition*

On April 15, 2008, Mute filed a Petition for Habeas Corpus in the U.S. District Court for the District of Alaska.[37] Mute filed a motion to be appointed counsel, which was granted on April 24, 2008.[38] Mute's counsel filed an Amended Petition on September 15, 2008.[39] Schmidt filed a motion to dismiss the petition on December 23, 2008, alleging that Mute failed to exhaust his state remedies as required by 28 U.S.C. § 2254(b)(1).[40] Mute filed a response in opposition on February 11, 2009.[41] Schmidt moved to withdraw the motion to dismiss on June 9, 2009.[42] Magistrate Judge Oravec granted the motion to withdraw on July 15, 2009.

*b. Second Amended Petition and Motion to Dismiss*

Mute filed a second amended petition on April 24, 2009.[43] Schmidt filed a second motion to dismiss on August 28, 2009, claiming that Mute procedurally defaulted his claims because they were never presented to the Alaska state courts.[44] Mute filed an opposition on December 2, 2009. Magistrate Judge Oravec filed an Initial Report and Recommendation

---

[32] Mute v. State, 4BE-01-317 CI.
[33] Docket 45, Second Amended Petition, at 4.
[34] Mute v. State, A-8894.
[35] Mute v. State, 2007 WL 4323004 (Alaska App. 2007).
[36] Mute v. State, S-12954.
[37] Docket 1, Petition for Writ of Habeas Corpus.
[38] Docket 2, Motion to Appoint Counsel; Docket 4, Order Granting Motion to Appoint Counsel.
[39] Docket 14, First Amended Petition.
[40] Docket 26, Motion to Dismiss.
[41] Docket 30, Response in Opposition to Motion to Dismiss.
[42] Docket 50, Motion to Withdraw Motion to Dismiss.
[43] Docket 45, Second Amended Petition.
[44] Docket 58, Motion to Dismiss.

denying the motion to dismiss as to the first ground for habeas relief, but granting the motion to dismiss as to the second and third grounds.[45] Both Mute and Schmidt filed objections to the Report and Recommendation.[46] Magistrate Judge Oravec issued a Final Report and Recommendation on September 2, 2011, which addressed the objections filed by the parties but did not alter the recommendations to the District Court.[47]

   c. *Interlocutory Appeal*

Schmidt filed a Motion for De Novo Review of the Final Report and Recommendation.[48] Mute filed a Response in Opposition on September 19, 2011.[49] Judge Beistline, after conducting a *de novo* review, concurred with Magistrate Judge Oravec, and dismissed the second and third grounds for habeas relief, but denied the motion to dismiss as to the first ground.[50] Schmidt filed a motion to stay the proceedings pending interlocutory review of the order denying the motion to dismiss.[51] Schmidt filed a Response in Opposition on October 17, 2011.[52] Judge Beistline denied the Motion to Stay on November 2, 2011.[53] Schmidt filed a Motion for Certification of Issues for Interlocutory Review as required by 28 U.S.C. § 1292(b) on November 18, 2011.[54] Mute filed a Response in Opposition on November, 23, 2011.[55] Judge Beistline granted the motion for certification on December 6, 2011.[56]

   d. *Merits Brief*

---

[45] Docket 84, Report and Recommendation Regarding Motion to Dismiss.
[46] Docket 101, Objection to Report and Recommendation (Schmidt); Docket 102, Objection to Report and Recommendation (Mute).
[47] Docket 103, Final Report and Recommendation Regarding the Motion to Dismiss.
[48] Docket 105, Motion for De Novo Review of Final Report and Recommendation.
[49] Docket 107, Response in Opposition to Motion for De Novo Review.
[50] Docket 108, Order Granting in Part and Denying in Part the Motion to Dismiss.
[51] Docket 110, Motion to Stay Pending Interlocutory Review.
[52] Docket 112, Response in Opposition to Motion to Stay.
[53] Docket 114, Order Denying Motion to Stay.
[54] Docket 118, Motion for Certification of Issues for Interlocutory Appeal.
[55] Docket 124, Response in Opposition to Motion for Certification.
[56] Docket 125, Order Granting the Motion for Certification.

Mute filed his merits brief on November 20, 2011.[57] Schmidt filed his merit brief on December 29, 2011.[58] Mute also filed a motion for an evidentiary hearing on December 27, 2011.[59] Schmidt has not filed an opposition to the motion for hearing.

## CONCLUSIONS OF LAW

**1. The Antiterrorism and Effective Death Penalty Act Limits the Ability of the District Court to Grant a Writ of Habeas Corpus when the Petitioner's Claims were Adjudicated on the Merits in State Court.**

In 1996, Congress passed the Antiterrorism and Effective Death Penalty Act (AEDPA),[60] legislation which "introduced a myriad of exceedingly complex procedural requirements… that a petitioner must satisfy in order to obtain merits review of claims set forth in a federal habeas petition."[61] Prior to AEDPA, state court interpretations or applications of federal law were not binding in federal habeas proceedings.[62] One of the primary changes in AEDPA is that a writ of habeas corpus "…shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim - (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[63]

---

[57] Docket 122, Memorandum in Support of Amended Motion to Vacater.
[58] Docket 135, Response in Opposition to Second Amended Petition.
[59] Docket 133, Motion for Hearing.
[60] Pub. L. No. 104-132, 110 State. 1214 (1996).
[61] Emily Garcia Uhrig, *The Sacrifice of Unarmed Prisoners to Gladiators: The Post-AEDPA Access-To-The-Courts Demand For a Constitutional Right to Counsel in Federal Habeas Corpus*, 14 U. Penn. L. Rev. (forthcoming 2012).
[62] Charles Doyle, *Federal Habeas Corpus: A Brief Legal Overview*, Congressional Research Service Report to Congress (April 26, 2006) (citing <u>Brown v. Allen</u>, 344 U.S. 443, 463 (1953)).
[63] 28 U.S.C. 2254(d)(1)-(2).

When the State court[64] decides a petitioner's claim on the merits, the federal district court is limited to the record before the state court,[65] and may only grant habeas relief if the requirements of § 2254(d) are satisfied. However, § 2254(d) does not apply if the State court did not decide the claim on the merits.[66] In that case, the district court should review the claim *de novo*.[67] In reviewing the record before the state court, the District Court is limited to the evidence and arguments presented to the state court that adjudicated the claim on the merits.[68] Thus, the District Court may not consider any evidence or arguments not presented to the highest state court that adjudicated the petitioner's claims on the merits.[69]

## 2. The District Court is Limited to the Facts and Arguments Made in Mute's Direct appeal.

In this case, the highest state court to adjudicate Mute's claim on the merits was the Alaska Court of Appeals during Mute's direct appeal.[70] During this appeal ("Mute I"), the Court of Appeals only considered the issue of whether Mute was denied his right to counsel under the Sixth Amendment when the state Superior Court refused to remove Carlson after Mute alleged the attorney-client relationship had broken down.[71] The Court of Appeals did *not* consider the majority of Mute's present claims, namely that Carlson's performance fell below an objectively

---

[64] In the event that a higher state court denies a claim without explanation, the relevant state court decision for the purposes of AEDPA is the "last reasoned state court decision." See Ylst v. Nunnemaker, 501 U.S. 797, 803-806 (1991).
[65] See Cullen v. Pinholster, 563 U.S. ___, 131 S.Ct. 1388 (2011).
[66] Cone v. Bell, 556 U.S. ___, 129 S.Ct. 1769, 1784 (2009).
[67] Rompilla v. Beard, 545 U.S. 374, 390 (2005).
[68] Cullen, 563 U.S. ___, 131 S.Ct. at 1398 (2011) ("Although state prisoners may sometimes submit new evidence in federal court, AEDPA's statutory scheme is designed to… ensure that '[f]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings.'") (citing Michael Williams, 529 U.S. 420, 437 (2000)).
[69] There are some exceptions to this general rule. For example, a petitioner is entitled to an evidentiary hearing in certain limited circumstances. See 28 U.S.C. 2254(e)(2). There are also circumstances where a petitioner's claim was not adjudicated on the merits in state court, but nonetheless was not procedurally defaulted and may be considered by the District Court. See, e.g. Williams v. Cavazos, 646 F.3d 626, 636-637 (9th Cir. 2011).
[70] Mute, 954 P.2d 1384. See Docket 103 at 5-9.
[71] Mute, 954 P.2d at 1385.

reasonable standard under Strickland v. Washington.[72] In fact, the Court of Appeals specifically noted that "Mute is currently litigating a post-conviction relief action based on the assertion that Carlson failed to provide him effective representation."[73]

This Report and Recommendation will be limited to determining if the breakdown in the relationship between Mute and Carlson, and the trial court's subsequent refusal to replace Carlson, constituted a denial of Mute's right to counsel under the Sixth Amendment. Mute's arguments, both in his Second Amended Petition and in his merits brief focus primarily on the argument that Carlson's representation was inadequate under Strickland. For example, the opening sentence of Mute's merits brief states "The standard for ineffectiveness of counsel which the Supreme Court set out in Strickland v. Washington, 466 U.S. 668 (1984), established a two-prong test i.e., that counsel's fell below an objectively reasonable standard, and that his performance prejudiced the outcome of the trial."[74] However, for the reasons above, this Report and Recommendation will not address Mute's Strickland claims.

**3. The State Court Decision in "Mute I" Did Not Violate Clearly Established Federal Law as Decided by the United States Supreme Court.**

In order to grant Mute's petition for a writ of habeas corpus, I must find that the adjudication of Mute's claim in state court resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the U.S. Supreme Court, or that it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[75] The only U.S. Supreme Court case cited by Mute, in either his Second Amended Petition or his merit brief, is

---

[72] 466 U.S. 668 (1984).
[73] Mute, 954 P.2d at 1386.
[74] Docket 122, Petitioner's Merits Brief at 1.
[75] 28 U.S.C. § 2254(d)(1)-(2).

Strickland, a case dealing with the issue of Carlson's performance (which is an issue not considered here).[76] Thus, Mute's petition may not be granted on the basis of §2254(d)(1).

## 4. The State Court Decision was not Based on an Unreasonable Determination of the Facts in Light of the Evidence Presented in the State Court Proceeding.

The other proposed basis for granting Mute's petition, §2254(d)(2) is equally unavailing. Mute does not allege, in either his Second Amended Petition or his merit brief, that the Alaska Court of Appeals in Mute I made any unreasonable factual determinations. Even taking a *de novo* review of Mute I, none of the Court of Appeals' findings of fact appear to be unreasonable. The only factual determination made by the Court of Appeals was that the relationship between Mute and Carlson had not deteriorated to the point where Carlson was incapable of effective communication or objective decision-making.[77]

In reviewing the record before the Court of Appeals in Mute I, it does not appear that the trial court's decision not to replace Carlson denied Mute of his right to counsel. It is axiomatic that indigent defendants are entitled to appointed counsel.[78] However, indigent defendants are not entitled to have a "meaningful relationship" with their appointed counsel.[79] In this case, the relationship between Mute and Carlson may have been strained, but the record does not show that the factual determination of the Alaska Court of Appeals was unreasonable.

## 5. Mute is not Entitled to a Hearing because he did not Develop the Factual Basis for his Claim during State Court Proceedings.

---

[76] Docket 45, Second Amended Petition at 5; Docket 122, Petitioner's Merits Brief at 1, 2.
[77] Mute, 954 P.2d at 1385. The record shows the relationship between Mute and Carlson was clearly strained. However, at least some of the blame lies with Mute, who consistently undermined Carlson, including continuing to talk over the trial court judge despite Carlson's admonitions. Later, Mute refused to testify, and refused to allow his brother, Paul to testify; after closing arguments had concluded, he changed his mind, and demanded that he and Paul be allowed to testify.
[78] See, e.g. Gideon v. Wainwright, 372 U.S. 335 (1963).
[79] Morris v. Slappy, 461 U.S. 1 (1983).

Mute has requested that the District Court hold an evidentiary hearing to establish the facts necessary to decide his motion for a writ of habeas corpus.[80] Mute claims that "[t]here are facts to be determined in order to rule on Defendant's motion."[81] AEDPA strictly limits the ability of the federal District Court to hold an evidentiary hearing "[i]f the applicant has failed to develop the factual basis of a claim in State court proceedings."[82] The Court may only hold an evidentiary hearing if the claim relies on a new rule of constitutional law which was made retroactive by the Supreme Court, or relies on a factual predicate that could not have been previously discovered through the exercise of due diligence.[83] The Petitioner must also show by clear and convincing evidence that, but for the constitutional error, no reasonable factfinder would have found the Petitioner guilty.[84]

In this case, Mute is not entitled to an evidentiary hearing because he did not develop the factual basis for his claims in State court, and none of the §2254(e) exceptions apply to his case. Mute now claims that there are facts that need to be determined in order to rule on his motion. Specifically, he cites the substance of the conversations between him and Carlson, the preparation and strategy behind Carlson's actions and trial, and Mute's allegation that Carlson failed to put on a defense.[85] However, these are all facts that Mute could (and should) have developed in a prior state court proceeding. Mute offers no justification for his failure to do so, not does he explain why his request for an evidentiary hearing isn't barred by § 2254(e). Thus, Mute is only entitled to an evidentiary hearing if he falls into one of the two exceptions. The first exception, a claim that relies on a new, retroactive rule of constitutional law, is not relevant

---

[80] See Docket 133, Motion for Evidentiary Hearing.
[81] Docket 133, Motion for Evidentiary Hearing at 2.
[82] 28 U.S.C. § 2254(e)(2)
[83] 28 U.S.C. § 2254(e)(2)(A)(i)-(ii).
[84] 28 U.S.C. § 2254(e)(2)(B).
[85] Docket 133, Motion for Evidentiary Hearing at 2.

here.  Mute makes no claim to relief under any new constitutional rule.  The second exception, newly discovered facts that could not have been previously discovered, is also unavailable.  All of the facts that Mute now seeks to develop relate to events that occurred during his criminal trial in 1996.  Mute makes no showing that any of these facts could not have been previously discovered.  Thus, § 2254(e) serves to bar Mute from being granted an evidentiary hearing.[86]

## CONCLUSION

Mute is not entitled to a writ of habeas corpus because his claim was adjudicated on the merits in state court, and he does not qualify for relief under 28 U.S.C. §2254(d).  Furthermore, Mute is not entitled to an evidentiary hearing under 28 U.S.C. §2254(e)(2).  Therefore, I recommend that Mute's motion for an evidentiary hearing be DENIED.  I also recommend that Mute's petition for a writ of habeas corpus be DENIED.


IT IS SO RECOMMENDED.

DATED this 15th day of March, 2012 at Fairbanks, Alaska.

    __s/SCOTT A. ORAVEC____
    SCOTT A. ORAVEC
    United States Magistrate Judge


Pursuant to Local Magistrate Rule 6(a), a party seeking to object to this proposed finding and recommendation shall file written objections with the Clerk of Court no later than **NOON** on **March 23, 2012** as any objections will be considered by the district judge. The failure to object to a magistrate judge's findings of fact may be treated as a procedural default and waiver of the

---

[86] Because §2254(e) applies, and Mute does not qualify for either of the statutory exemptions, I do not reach the issue of whether Mute has demonstrated by clear and convincing evidence that, but for the alleged constitutional error, no reasonable factfinder would have found him guilty of the underlying offense.  See 28 U.S.C. §2254(e)(B).  As such, I express no opinion as to whether Mute has made a sufficient showing under that standard.

right to contest those findings on appeal.[87] The Ninth Circuit concludes that a district court is not required to consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation.[88] Objections and responses shall not exceed **five (5) pages** in length, and shall not merely reargue positions presented in motion papers. Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support. Response(s) to the objections shall be filed on or before **NOON** on **March 30, 2012**. Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1) should not be filed until entry of the district court's judgment.[89]

---

[87] McCall v. Andrus, 628 F.2d 1185, 1187-1189 (9th Cir.), cert. denied, 450 U.S. 996 (1981).
[88] United States v. Howell, 231 F.3d 615 (9th Cir. 2000).
[89] See Hilliard v. Kincheloe, 796 F.2d 308 (9th Cir. 1986).